and what we wanted to bring the court's attention to was the, what we consider an egregious instructional error, which was the discovery instruction, where the court highlights the defense's failure to comply with California discovery rules. And so that so infected the trial on the basis of all the evidence against Mr. Cummings that we should declare he didn't get a fair trial, his due process rights were violated? Well, in response to the court's question, we dispute whether there was so much evidence against Mr. Cummings with respect to all of what happens. It was all flaky drug people and, you know, they could, yeah, I understand all that, but I mean, we had eyewitness testimony, obviously susceptible to devastating cross-examination because of who they were and what they did and that they were under the influence. But we really do have to find, do we not, prejudicial impact that so infected the trial that this one instruction on defense counsel's failure to comply with discovery obligations deprived Mr. Cummings of a fair trial? And it was unreasonable for the California courts to conclude otherwise under AEDPA. Yes. Well, that's our position, because we have a problem even finding what's so prejudicial, even in a terribly close case, about the instruction. All they told the jury was that the defense lawyer and the defendant filed things that were untimely. Is that so unusual in the practice of law? Well, it actually, most California cases that are coming now, coming down now, are reversing. There have been several reversals based on this instruction. But it, what Reversing just because the judge said that they didn't file a discovery request on time? Well, the way I look, the way we look at it is when we come into a trial, and I also try cases, everybody comes in with a halo. The judge does, prosecution does, everyone except the defendant, and then defense counsel. Well, but in this case, most of the prosecution's witnesses' halos were slipping a bit, don't you think? Well, but it doesn't affect the prosecutor. They don't really hold it against the prosecutor. Even when the defense puts on witnesses, it's hard for a jury to really look at them the same way that it does the prosecution witnesses. Even though here they were given grants of immunity and we had I mean, from a defense lawyer's standpoint, it seems to me that this case would be, I mean, it's got all kinds of great stuff for cross-examination. I mean, everybody's got a motive to to falsify. You've got all kinds of credibility problems because everybody was constantly, you know, hopped up on all kinds of controlled substances. Well, we still have to find it was so prejudicial as to deprive them of a fair trial. But the one good thing that you don't often get was a scientist. You know, we have scientific evidence of the gunshot. They did a scientific test. So normally in a case like this where you have problems with credibility and you have some sort of scientific proof. But they heard, I mean, he didn't exclude, the trial judge, the superior court judge didn't exclude the scientist from testifying, did he? It wasn't excluded but So the jury heard all of what he had to say. But a lot of times it's worse. First of all, there's nothing in the instruction that tells them that this that this instruction is not going to affect the burden of proof or it doesn't tell. It just basically it sounds kind of clinical when the court instructs. But it actually taints the defense. Here we have the one witness, Mr. Mr. Cummings, is saying that it was, you know, kind of a accidental or whatever self-defense. Court of Appeal finds not that much evidence to support the murder. And and we really don't know how the jury construed this instruction. So where there was a benefit, where there was a if the jury had any concerns, they would have looked at it and said, well, wait a minute. You know, they they didn't play fair. You said they're reversing these days in the California. Is this an instruction that's given frequently? It's not given frequently because recently there have been some some new cases on this instruction. And the California courts have instructed. I happen to have them if the court wants them. They do what? What do they do? They've reversed recently because of this instruction. This is a modified instruction. The instruction is Cal Jig 2.28. And I've run a search on the Ninth Circuit. I don't think the court has dealt with this particular instruction. The only which is modified. The one we have is modified? Yes, it's a modified. Modified since then. No, no, no. Cal Jig 2.28 is the standard instruction dealing with the failure to disclose. And it can go both ways. But in this case, the court modified the instruction. To do what? How did they modify it? Well, technically, in in the standard instruction, the instruction tells the jury that the failure to produce a trial may not be. Considered against other defendants. Well, that doesn't help. Yeah, that doesn't help. But with with what the courts have said is that there's nothing in the instruction that tells the jury that it doesn't affect the burden of proof beyond a reasonable doubt. That's what a lot of the California courts have said. There's people. The California courts have said, some courts at least, the entire instruction is bad, right? Yes, they have. A lot of the courts have voiced concerns about it. Just just by the wording, it doesn't really. I don't understand what the point of it is, but I also don't see terribly prejudicial. Well, it it really hurts. It injects it injects things into the trial that the jury doesn't need to know about. The court's giving them facts outside of evidence that the defense did something that was against the law. But there are instances where that's a relevant consideration. For example, if the prosecution pulls a surprise witness out on the in the midst of the trial, the defense is usually given a fair amount of latitude so that the jury knows that it's a surprise witness and that they didn't have advanced notice of what the witness was going to say. Right. During testimony, it can come out where there's. But I mean, I guess my question is, isn't that a relevant consideration for the jury to hear in assessing the weight to be given in determining credibility? Well, sure. The prosecution can say, well, you had this report on your computer. You didn't turn it over to the defense. And and that could have been considered. But it's it's different than having it come from the judge making a factual determination that the defense violated the law in the California discovery law. And the jury doesn't know that it's not supposed to be not supposed to consider this kind of instruction that it's not supposed to infer any guilt or anything from the instruction. It seems to me exclusion is in Taylor versus Illinois's was almost a better, a better way to go. And that was limited to the facts of that case. Because then the jury really doesn't know the jury doesn't get to hear the witness. But to have the judge comment on any witness and to single out a particular witness, it's always very unfair. Some states permit it, don't they? I know we don't in the federal system, but actually some states do permit judges to comment. It is permitted under California law, but under California law, there is a little disclaimer at the end. And judges rarely do because they know. Well, I mean, in the federal system, we don't like them to do it at all. And it's probably reversible to do it. But but the states do it differently. Yes. But in this case, and particularly anytime the judge comments on the evidence, it hurts. It really hurts, especially if it's a negative comment against the defense. Because the jury's placed so much weight on what the judge is thinking. And many juries believe that the judge really knows who's guilty and who's innocent. So it's very important for the judges not to make any comment about the evidence and how it's perceived. In this in this case, particularly. The judge didn't make a comment on the evidence. Well, he made. The substance of the evidence, the substance of her testimony. All he said was Defendant Cummings, by and through his attorney, failed to disclose such evidence in a timely manner. And I guess regarding the testimony of Ms. Minor. But it talks about how the defense is required to disclose names and addresses of persons and. Comment on the substance of her testimony. Right. But. In fact, she was able, the defense was able to present her and present all of her testimony, as I understand it. Yes, but, you know, but it's still. She was able to offer her key opinions that the defense thought was important. Yes, that is true. But. The judge says nothing about those opinions. He doesn't criticize, he doesn't say anything. Except that. Judge Reinhardt said why a judge would want to give this instruction is beyond me. But they did. Yes. Well, I agree with that, that why a judge would want to give this. It's probably to satisfy the prosecution because they were complaining about. But it's just, it really hurts, this instruction. It really does. In a case like this where, especially we're challenging all of the evidence. Failure to instruct on involuntary manslaughter. Well, let's talk about that. It seemed to me that trial counsel opted for an all or nothing strategy, which is a perfectly legitimate defense strategy in a murder case to try and go for broke on the aggravated first degree murder charge in the hope that the jury will have a reasonable doubt as to the elements. And, in fact, there was no, there was no request for it. The defense counsel said, no, I don't want it. And it seems to me that's, why isn't that not invited error? Well, it's not invited error because of the exceptional circumstances of this case. Because the defense lawyer tried and the jury rejected and the gamble was lost? Well, in some instances, a lot of times the courts will give lesser included instructions over the defense objection and the defense can't do anything about it. Why not here? What Supreme Court case would require that to occur such that under EDSA we have to find it objectively unreasonable for the California courts to conclude otherwise? I'm sorry. Could the Court repeat the question? Sure. What Supreme Court case would require us to find that there was a constitutional due process violation where defense counsel said, I don't want it? That there's an affirmative obligation on the part of the trial judge to give it? Well, I believe there's a due process case. I believe it's Hennessy v. Goldsmith, which is, I'm not sure whether that sui sante obligation to instruct. We know that this Court does not hold a sui sante duty to instruct, but many circuits do. And particularly in this case, where there were exceptional circumstances. Under the Anti-Terrorism Effective Death Penalty Act. Yes. We have to look at the clearly established law by the United States Supreme Court. And Judge Tallman asked which U.S. Supreme Court that's clearly established says that instruction had to be given. I don't think there is a case. If I could, right. There is an, exactly. Except possibly in the context of a death penalty. And this is not a death penalty case. Yes. And we're wondering why it can't be extended to cases like this, where we're facing life with the possibility of parole. But without the possibility in this case. But we're wondering why it can't be extended to those circumstances. I mean, and even the courts have said that what we really want and the whole reason for the court to take charge of what should be instructed or not is that the person gets a fair trial. So just because defense counsel says, you know, I don't want it. I want to roll the dice. You know, California courts hold otherwise. And well. Except for they uphold the uninvited error doctrine. Yes, they do. They uphold counsel's decision. Yes. And before I leave my time for rebuttal, I just wanted to say that it seems in this case that the California court did find a number of errors and a number of unreasonable errors. But nevertheless, it seems like just due to the circumstances of the case, they just couldn't bring themselves to overturn the case. Because clearly my Mr. Cummings did fire the shot. But again, it was the circumstances of the case that we're saying that he didn't get a fair trial on. And particularly in light of the fact that the one, let's say, scientific piece of evidence was singled out by the court and cast in a shady dispersion. Would it have made? Never mind. Okay. I'll let you reserve your time. Okay. Thank you. Good afternoon. May it please the Court. Doris Calandra, Deputy Attorney General, representing Respondent. Argument 3 concerning 228, which is the Calgic that counsel was talking about. The Calgic in 228, which is not the instruction that was given in this case, is the one that is being criticized by certain courts of appeal. As mentioned in the reply brief, Bell, Lawson, and Cabral all say 2.28 is wrong, but that was not the instruction given. The problem with 228 is that it leaves a jury rudderless. They're told something bad happened, and you must evaluate the evidence, and you must do something with it, but they're not given guidance on what to do with it. That paragraph and a half was left out of this instruction. So we don't have a case of a rudderless jury. Those cases ---- I don't understand that. This jury was told something was wrong, and they weren't told what to do about it. And the problem with 228 is it goes on and tells them, go forth and use the evidence, explicitly, and then doesn't say how to use the evidence. That's the criticism. It's not criticized by all courts. There's a case not in the reply brief, which is Saucedo at 121 Calat 4th 937 or 939 that went the other way, noticing Bell and said no. But what those cases also do, they just don't decide it on the language used in the instruction. They have decided it based on the fact, now we're going to look and see if there was harm beyond a reasonable doubt. We're going to look and determine, was this an overwhelming case by the prosecution? Some of the cases say yes, it's harmless error. Some of the cases say no. Kennedy, your argument here, because here the State court did find the instruction was wrong for a different reason. Yes. So we're assuming that the instruction was wrong. Right. And the question is whether it was prejudicial. On that point, I would like to tell the Court, counsel and I spoke about this this morning. There was an opinion in this case by the State court of appeal, and then there was a modified opinion. But the modified opinion cleared up an absolutely incomprehensible reason. I cut and pasted it twice, and we believe that that is to be inserted at page 47 as the second paragraph. And if you read the second half of that modified paragraph, the Court is using saying, assuming arguendo, even if we had to say that the proof is there beyond a reasonable doubt, we find it so in this case, which then puts us into a DPA deference. And I do think that that is the correct reading of the record. We're not looking this anew. We do get to afford the court deference because they did use the correct standard, which says there was reasonable doubt. It was overwhelming. It was beyond a reasonable doubt. The ‑‑ I do disagree with counsel saying that Amy Mongan's testimony, her credibility was in any way disputed. In fact, this whole episode enhanced her credibility through her testimony. James Weigand and she were people who worked together. When he said, no, I never saw that, my goodness, if Amy Mongan said that she did the review what she said and I'm going to look at it carefully, he did that. He then testified in the rebuttal saying, I can't say my original opinion based on what she said, based on the test she performed. She said the gun was six inches away. He found it was a distance of four feet. He said it's inconclusive. That really helped the defense. Because you had the people's experts saying, I believe in her results so much and in her testimony, that I'm changing my opinion and now I'm going to say that we can't make a determination as to what distance the gun was away from the victim at the time it was fired. And never did the court address her credibility in that instruction or in any way. One minor point on the discussion of this being an LWOP case, this is only an LWOP case not because of murder for which the lesser‑inclusive voluntary manslaughter would apply. It's an LWOP case on the section 209, kidnap for the purpose of extortion. So trying to turn back, have this court extend back, you know, take it away from what it's done before and say that the lesser‑includes are required, even though counsel says no, thank you, and please don't, we really don't want them, the fact that this was an LWOP certainly has no bearing, the extension has only been made in capital cases. I would invite questions from the court. I don't think we have any. Thank you very much. Then I would submit. Thank you. If I could just briefly respond, what really hurts about the instruction is that they talk about the failure to disclose evidence in a timely manner, and they talk about what the law is. But based on the point that Ms. Calandra made, if the State's expert then gets back up on the witness stand on rebuttal and says, you know, she's right, I cannot reconfirm my earlier estimate that I testified to in the case in chief on the distance of the weapon from the victim when fired, how is the defendant prejudiced? I mean, it seems to me that it did enhance the defense theory. Well, then we wonder why the court, again, as this court has noted, why the court gave the instruction. But, you know, as a trial attorney, I've had this instruction given, and it just makes you ‑‑ I was irritated about a discovery violation. Sometimes they get a bit carried away. Yes. When there's a minor violation. Okay. But I don't know. It's just any time the court, you know, as a trial attorney, as a defense attorney, especially in a case like this. And I understand. You get irritated with what the judge does with good reason. Yes. Yes. But unfortunately, that doesn't make it a constitutional violation. Yes. Unfortunately. Well ‑‑ I don't think you can deal with under-input. Yes. As you know, there is no Supreme Court case that we would have to apply a clearly established Supreme Court law. And there really isn't any that helps. Well, except for maybe the Illinois case where they excluded it, which might have been better than telling the jury something about this. So I would just like to leave ‑‑ A good try. Thank you very much. Thank you both. The case just argued will be submitted.
judges: Reinhardt, Paez, Tallman